Raymond M. Buddie, Esq.    (SBN 121353)
Kenneth L. Mahaffey, Esq.    (SBN 172622)
PECKAR & ABRAMSON, P.C.
250 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone: (415) 837-1968
Facsimile:  (415) 837-1320

Attorneys for Plaintiff, TURNER CONSTRUCTION COMPANY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURNER CONSTRUCTION COMPANY, a New York corporation,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, and DOES 1 through 50, inclusive,<br><br>    Defendant. | Case No.: CV 03-01227 SBA<br><br>**TURNER CONSTRUCTION COMPANY MOTION *IN LIMINE* NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT**<br><br>**MOTION IN LIMINE 4 OF 4**<br><br>Judge: Hon. Saundra B. Armstrong<br>Trial Date: September 27, 2004 |

## I. INTRODUCTION

To this Honorable Court, Defendants, and their Attorneys of Record, Plaintiff, Turner Construction Company ("Turner"), respectfully moves this Court to issue an Order *in limine* to exclude any evidence proffered by defendants, including but not limited to testimony from its expert Mr. Anderson, regarding damages calculated by the Expert's own admission, not based on the HPI/Turner Subcontract ("Subcontract"). As such, damages not in conformity with the Subcontract, are irrelevant. The issues that exist are as to the extent of NAICO's liability according to the Subcontract. The issues can only be resolved in the absence of the irrelevant, and inadmissible testimony, and a motion should be ordered requiring parties to introduce evidence in conformity with the articles and provisions of the Subcontract.

/ / /



TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
1

34632.02/09/07/04

## II. ARGUMENT

The subcontract was specifically incorporated into the Bond without limitation, and the extent of NAICO's liabilities, including cost obligations are determined by the Subcontract. "It long has been settled in California that where a bond incorporates another contract by an express reference thereto, 'the bond and the contract should be read together and construed fairly and reasonably as a whole according to the intention of the parties. (citings omitted) to ascertain the nature and extent of the liability to which the surety has bound itself, courts must 'examine the language of the undertaking by the light of the [construction] agreement, faithful performance of the terms of which it guarantees.'" *Cates Construction v. Talbot* (1999) 21 Cal.4th 28, at 39-40. Furthermore, "'Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time ... This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise.'" *Amelco Electric v. City of Thousand Oaks*, 115 Cal.Rptr.2d 900, 911 citing *Erlich v. Menezes* 21 Cal.4th 543, 550 (1999). Moreover, in the case of Surety law, when the surety, upon demand by the Obligee to complete the project or otherwise act pursuant to the Bond, wrongfully denies liability (or refuses to exercise one of the express bond options provided), the surety, in breach of its obligations, may be required to pay all costs of completion, all consequential damages. *Cates v. Talbott*, supra, 21 Cal.4th at 41-44; *City of Sacramento v. Trans Pacific Industries* (1979) 98 Cal.App.3d 389; see also *Continental Realty Corp. v. Andrew Krevolin* (1974) 380 F. Supp. 246.

As a matter of law, costs recoverable by Turner should be calculated based upon the Subcontract and its terms and conditions. NAICO bound itself to the Subcontract's terms and conditions, and are now responsible for the same obligations and liabilities as its Principal, HPI. In addition, to the extent that NAICO failed to perform its obligations under the Performance Bond, NAICO is also responsible for consequential damages. As a matter of law, parties should be required to calculate any such damages according to the terms and conditions of the Subcontract.

/ / /

/ / /

LAW OFFICES
Peckar & Abramson
A Professional Corporation

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
2

34632.02/09/07/04

### A. FACTUAL BACKGROUND

The Performance Bond expressly incorporated the Subcontract, without limitations:

> "Whereas Subcontractor has by written agreement dated February 1, 1999 entered into a subcontract with Obligee for the performance of Work Restoration... which subcontract is by reference made a part hereof..."[1]

By expressly incorporating the Subcontract, without limitation, NAICO became responsible for the same requirements and liabilities of the Subcontract. The Subcontract clearly lays out the cost liabilities the Subcontractor and its Surety are responsible for in the event of different circumstances arising during the course of performance. The applicable clauses in the HPI Subcontract to the events that occurred on this Project are as follows[2]:

> ***Article III of the Subcontract (Time of Completion)***: "....Should the progress of the Work or of the Project be delayed, disrupted, hindered, obstructed, or interfered with by any fault of neglect or act or failure to act of the Subcontractor ... so as to cause any additional cost, expense, liability or damage to Turner including legal fees and disbursements incurred by Turner (whether incurred in defending claims arising from such delay to in seeking reimbursement and indemnity from the Subcontractor and its surety hereunder or otherwise) ... <u>the Subcontractor and its surety shall and does hereby agree to compensate Turner and the Owner for and indemnify them against all such costs, expenses, damages and liability</u>."[3]
>
> ...
>
> "If, however, the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor ... <u>Turner shall have the right to ... to take whatever other action it deems necessary to avoid delay in the completion of the Work and of the Project, and the cost and expense of such overtime and/or such other action shall be borne by the Subcontractor</u>."[4]

---

[1] See Exhibit B, attached to Declaration of Grant Griffanti, ¶2, dated September 3, 2004, offered in support of Turner's Reply to NAICO's Supplemental Opposition to Turner's Motion for Summary Adjudication. (Hereinafter "Decl. of Griffanti, dated Sept 3, 2004, to Turner's Reply.") A courtesy copy of the Declaration and its Exhibits have been provided to the Court with this Motion in Limine.
[2] See Exhibit A, attached to Decl. of Griffanti, ¶2, dated September 3, 2004, to Turner's Reply.
[3] California case law has allowed recovery of attorney fees if such costs are allowed by contract. *Jen-Mar Construction Co v. Brown* (1967) 247 Cal.App.2d 564, 573 (emphasis added).
[4] "Courts in California have not hesitated to find sureties contractually liable for damages attributable to their principals' delay in performing construction contracts." *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 41. In California, it is well settled that a claimant seeking recovery under a bond, may recover both actual damages (increased cost of completing the bonded contract) and liquidated damages for delay caused by the principal's breach. *Pacific Employers v. Berkeley, supra,* 158 Cal.App.3d 145 (emphasis added).

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
3

34632.02/09/07/04

***Article V of the Subcontract (Extension of Time)***: "The Subcontractor agrees that it shall contribute a fair and proportionate share of the costs of advancing the claims of the Subcontractor for delay, including but not limited to legal and other professional fees."

***Article XI of the Subcontract (Failure to Prosecute)***: In the event of default, "excess shall be paid by Turner to the Subcontractor or its surety shall pay the difference to Turner. Such cost and expense shall include, not only **the cost of completing the work** ..., but also all losses, damages, costs and expenses (including legal fees and disbursements incurred in connection with reprocurement, in defending claims arising from such default and in seeking recovery of all such costs and expense from the Subcontractor and/or its surety), and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default."

***Article XXIV of the Subcontract (Bonds):*** "… Subcontractor and its Surety hereby agree to promptly pay all lawful claims… and shall indemnify and save harmless Turner of and from all liability loss, damage and expense, including interest, costs and attorney fees, which Turner and/or its Surety may sustain by reason of Subcontractor's or its Surety's failure to do so."

***Attachment B (Subcontract), Item 2(j):*** To extent any sub delays project completion, responsible for prorated portion of $5,000 LD clause Turner would owe to Owner.

### B. LEGAL ANALYSIS

The Subcontract clearly lays out the cost liabilities when certain events arise, including the event of Subcontractor/Surety Failure to Perform, and the event of delay, allowing for indemnification of liquidated damages assessed by the Owner; the two major types of damages Turner is specifically looking to recover. Regardless of any decision as to liability on NAICO's breach of bond obligations, the Subcontract specifically sets forth the costs the Subcontractor and/or its Surety is liable for in the event of Failure to Prosecute work properly in Article XI of the Subcontract.[5] NAICO was fully aware of the costs that it would be liable for in the event HPI, or NAICO failed to properly prosecute the Work, and Turner was forced to complete:

> Article XI. "…Such cost and expense shall include, not only **the cost of completing the work** ..., but also all losses, damages, costs and expenses (including legal fees and disbursements incurred in connection with reprocurement, in defending claims arising from such default and in seeking

[5] Note that although Turner has calculated its damages explicitly by Contract terms, California law also allows that upon default by (sub) contractor/principal of the construction (sub) contract, the measure of damages is the difference between the contract price and the price of completing the work, including in the event of delay, incidental damages, eg., increases in costs resulting from the delay. *Amerson v. Christman* (1968) 261 Cal.App.2d 811, 823.

LAW OFFICES



A Professional Corporation

recovery of all such costs and expense from the Subcontractor and/or its surety), and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default."[6]

"Such costs" expressly included "cost of completing the work". The Turner/HPI Subcontract specifically states total cost to complete as a portion of the cost liability in the event Subcontractor defaults, and Turner is forced to complete the Subcontractor's scope of work. Turner is not seeking a "total cost" method outside the terms of the contract, such as in the case of abandonment (situation at issue in *Amelco*), but puts forth that costs at issue due to various events that occurred on this Project, and are the responsibility of HPI and/or NAICO, be calculated directly by the Subcontract terms itself. Explicitly dictated by the Subcontract Article XI is that in the event of default by the Subcontractor, failure to prosecute the work properly by the Subcontractor and/or Surety, and Turner being forced to complete the work, Turner is entitled to recover the cost to complete. Hence, the "cost to complete" was a foreseeable cost by the NAICO at the Subcontract was incorporated into the Performance Bond.

Cases such as *Amelco* specifically stand for the premise that parties are held to damages that are reasonably foreseeable based upon the contract terms as this enables parties to "estimate in advance the financial risks of their enterprise." *Amelco Electric v. City of Thousand Oaks*, 115 Cal.Rptr.2d 900, 1129-1130. NAICO was aware of the financial risk it took choosing to "do nothing" and forcing the situation in which Turner had to complete HPI's scope of work. As a matter of law, damages resulting from HPI's default, and NAICO's decision to "do nothing" forcing Turner to complete HPI's scope of work,[7] are dictated by the terms of Subcontract in that Turner is entitled to "cost of completing the work".[8]

---

[6] See Exhibit A, attached to Decl. of Griffanti, ¶2, dated September 3, 2004, to Turner's Reply (emphasis added.)[6]



TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
5

34632.02/09/07/04

Furthermore, following the same premise that damages are calculated based upon the Subcontract, delay damages should also be determined by the terms of the Subcontract as a matter of law. Articles III, Attachment B Item 2j, and the Performance Bond specifically speak to the issue of delay and resulting damages, as well as to what extent of delay costs the Subcontractor and/or the Surety are responsible to indemnify Turner, explicitly granting Turner the right to recover the Subcontractor's prorated share of liquidated damages.[9] Professional Fees were also foreseeable damages based upon the explicit terms of the Subcontract. Articles III, V, XI and XXIV explicitly grant Turner the right to recover all of its professional fees in recovering its costs from NAICO due

---

[7] Although Turner maintains that NAICO's choice to "do nothing" and failure to perform one of the three options available to it in the event of default by its principal is in fact a breach of contract obligations, at this time Turner is in fact calculating the costs to complete based on explicit contract terms, regardless of whether or not NAICO is found to be in default.

[8] As can be seen by the table below, Turner has broken out those costs not directly related to "Cost to Complete":

| Description | Dollar |
|---|---|
| Cost Report Total | $4,066,595.16 |
| (less) Retention Owed to HPI as of 7/31/01 | ($154,808.92) |
| (less) P&A Costs listed in Cost Report | ($7,817.50) |
| **Total Cost to Complete HPI's Work** | **$3,903,968.74** |
| (less) Change work not created Prior Default nor Relating to Original Scope | |
| PCO 1316 | ($1,289.00) |
| PCO 1298 | ($1,882.00) |
| PCO 1671 | ($1,403.00) |
| PCO 1827 | ($526.00) |
| **Adjusted Cost to Complete HPI's Work** | **$3,898,868.74** |
| (less) Original Contract Value | ($2,077,370.00) |
| (less) Amount over Original K Value Paid by Regents | ($931,713.00) |
| **Cost to Complete HPI's Work Owed by NAICO** | **$889,785.74** |

[9]

| Description | Dollar |
|---|---|
| Delay Days (sole responsibility) | $ 130,500.00 |
| Delay Days (shared responsibility) | $ 168,000.00 |
| **Total LDs** | **$298,500.00** |

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
6

34632.02/09/07/04

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

to the HPI default, as well as a portion of the costs incurred due to presenting claims to the Owner and in defending delay claims brought by the Owner.[10]

In *Boyajian v. United States* (1970) 423 F.2d 1231, 1235[11], the Court's issue with the "total cost" theory was that:

> "However, contrary to these basic causal-connection damage principles, no attempt is here made to relate any specific amount of increased costs to any particular alleged breach."

In the *Boyajian* case, the plaintiff alleged several breaches and then attempted to consolidate for damage purposes, costs into a claimed unadjusted "total cost" recovery. However, the situation in *Boyajian* is a different situation than the one at issue before the Court now, in that the damages in this case are based directly on the Subcontract's terms and conditions, and distinctive damages regarding: Cost to Complete, Delay Damages and Attorney and Professional Fees, as required by the Subcontract. In fact, Turner's presentation of damages, specifically broke out the Attorney and Professional fees from the Total Cost Incurred on the Project, as well as the change costs that were not either related to original base contract work or change work added to scope prior to default, thus not a part of HPI's scope at the time of default.[12] Furthermore, both delay damages and Attorney and Professional fees are broken out in even further detail, i.e. attorney and professional fees are separated by those incurred to recover costs resulting from NAICO's failure to perform under the Performance Bond (Article XI) and those incurred as a prorated share of presenting claims to and defending against claims by the Owner (Articles III and V).

---

[10]

| Description | Dollar |
|---|---|
| Attorney & Professional Fees to-date re: NAIC / payment | $207,500.22 |
| ADR Consulting Costs - Shared Expense of Supporting Claims Presented to and Defending Claims Against Owner | $97,624.96 |
| ***Total Attorney & Professional Fees*** | ***$305,125.18*** |

[11] Also see *Huber, Hunt & Nichols, Inc v. Richard Moore*, 67 Cal.App.3d 278, 307-310 (1977) discussing *Boyajian* at length, and in general agreement with Boyajian.

[12] If anything, it is NAICO that attempts to present a pure total cost calculation of damages, ignoring the Subcontract terms, by purely analyzing the damages based solely on accounting by dates on a change order document, ignoring the industry standard of the change order process, and without review of actual scope that was encompassed within HPI's scope of work at the time of default. See Turner's *Motion in Limine No. 1* regarding the deficiencies in NAICO's expert Mr. Anderson's attempt to calculate damages without review of proper documentation and consideration of those documents.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
7

34632.02/09/07/04

All costs being claimed as damages, costs due to Failure to Prosecute, Costs due to Delay by Subcontractor, Attorney and Professional Fees are foreseeable costs based upon the terms of the Subcontract, and broken out according to Subcontract terms. As a matter of law, damages should be calculated by the express terms of the Subcontract as those were the cost liabilities reasonably foreseeable and within parties contemplation at the time the contract was entered into. See, *Cates Construction v. Talbot* (1999) 21 Cal.4th 28, 39-43. *Amelco Electric v. City of Thousand Oaks*, 115 Cal.Rptr.2d 900, 911.

### III. CONCLUSION

For the foregoing reasons, Turner respectfully requests the Court to grant its motion *in limine* prohibiting NAICO from presenting evidence or argument at Trial regarding calculation of damages in any manner that conflicts with Subcontract, unless, if appropriate, any consequential damages allowed by NAICO's failure to perform any of the three options under the Performance Bond. Such an Order is necessary because Turner is entitled to all damage remedies set forth in the Subcontract as a result of NAICO's failure to perform any of the contractual obligations.

Dated: September 7, 2004                    PECKAR & ABRAMSON, P.C.


By: /s/ Raymond M. Buddie /s/
    Raymond M. Buddie, Esq.
    Attorneys for Plaintiff,
    Turner Construction Company



LAW OFFICES
Peckar &
Abramson
A Professional Corporation

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
8

34632.02/09/07/04

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

TURNER CONSTRUCTION COMPANY MOTION IN LIMINE NO. 4 TO EXCLUDE ACCOUNTING OF DAMAGES NOT IN CONFORMITY WITH CONTRACT
CV 03-01227 SBA
9

34632.02/09/07/04