SEDGWICK, DETERT, MORAN & ARNOLD LLP
JAMES P. DIWIK (Bar No. 164016)
JOEL M. LONG (Bar No. 226061)
One Embarcadero Center, 16th Floor
San Francisco, California 94111-3628
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
NATIONAL AMERICAN INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURNER CONSTRUCTION COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL AMERICAN INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C 03-01227 SBA<br><br>**NATIONAL AMERICAN INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE TURNER CONSTRUCTION COMPANY'S PROPOSED EXPERT WITNESS, MICHAEL MURPHY**<br><br>Trial Date:   September 27, 2004<br><br>Judge:   Hon. Saundra Brown Armstrong |

Defendant National American Insurance Company ("NAICO") respectfully moves <u>in limine</u> pursuant to Rules 702 and 704 of the Federal Rules of Evidence for an order precluding plaintiff Turner Construction Company's ("Turner") proposed expert witness, Michael Murphy, from testifying at trial on the grounds that (1) his expert opinion in this matter is inherently untrustworthy and unreliable, and (2) his expert opinion in this matter is based on incorrect assumptions of law.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **ISSUE PRESENTED**

Whether Turner expert witness Michael Murphy should be precluded from presenting

testimony at trial on the issue of liquidated and/or delay damages on the basis that (1) his expert testimony is inherently untrustworthy and unreliable insofar as his "expert" testimony in a related action against the project owner assigned all liability for delay against the owner, and (2) his expert testimony is based upon incorrect assumptions of law.

## II.  RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.  Murphy's Retention

On June 28, 2004, Turner designated Michael Murphy of ADR Consulting, Inc. as an expert witness who may testify on Turner's behalf at trial. Turner's expert disclosure included a copy of Mr. Murphy's "Preliminary Expert Report," which generally describes the scope of Mr. Murphy's work as "schedule comparison" of Handypersons, Inc.'s ("HPI") as-built versus baseline contract schedule and "resource comparison" of HPI's as-built field labor resource curve versus the baseline contract schedule resource curve. Although the descriptions contained in Mr. Murphy's report are technical in nature, Turner essentially retained Mr. Murphy for the purpose of examining HPI's work on the Hearst Memorial Mining Building project (the "Project") and attempting to demonstrate that said work delayed the overall completion of the Project for purposes of Turner's claim for liquidated damages against NAICO in the instant matter.[1]

Mr. Murphy's report states that he and his firm were retained by Turner in or around June 2000 (roughly six months after construction on the Project began) to "perform project schedule and impact analysis during construction." Subsequently, in August 2003, Mr. Murphy and his firm was retained "for compilation of expert reports for mediation, depositions and trial" in the lawsuit between Turner and the owner of the Project, the Regents of the University of California

---

[1] A copy of the narrative portion of Mr. Murphy's expert report, excluding exhibits (the "Murphy Report"), is attached as Exhibit A to the *Declaration of Joel M. Long in Support of National American Insurance Company's Motion in Limine to Exclude Turner Construction Company's Proposed Expert Witness, Michael Murphy* (the "Long Dec.") filed concurrently herewith.

(the "Regents'), in a matter captioned <u>Turner Construction Company v. Regents of the University of California</u>, Alameda County Superior Court, Case No. 2002-046543 (the "Turner-Regents Lawsuit").

**B.     Murphy's Deposition Testimony in the Turner-Regents Lawsuit**

In the Turner-Regents Lawsuit, Mr. Murphy was retained by Turner as an expert witness to testify at trial regarding, among other things, "the cause for delays on the project" and the "impact of the delays on the project." During Mr. Murphy's expert deposition conducted by the Regents' counsel, Mr. Murphy offered the following testimony with respect to his expert opinion regarding these issues:

> Q:   Let's talk about your schedule analysis. In its expert witness disclosure, Turner stated that you were going to offer opinions concerning the cause for delays in the project, the impact for delays on the project?
>
> A:   That's correct.
>
> Q:   And have you done that?
>
> A:   I have an opinion to offer, yes.
>
> Q:   What's your opinion?
>
> A:   **My opinion is that the University is responsible for somewhere between 375 and 475 days of delay.**
>
> Q:   **What's the basis of that opinion?**
>
> A:   **The basis of that is a lot of the items that I showed you in the first scheduling document and the backup that's supported there. It's my review. And the creation of the critical path, the delays to the critical path and the isolation of change orders that took place on the project such as T and M documents or SIS's that were issued.**
>
> (Emphasis added.)

Later in his deposition, Mr. Murphy expounded upon this testimony as follows:

> Q:   Are you calling these concurrent delays because on those same days you also have indicated other delay activates that are different from that particular activity; is that right?
>
> A:   That's right.
>
> Q:   On the front of Exhibit 5 there is a table; is that right?

| | | |
|---|---|---|
| 1 | A: | That's right. |
| 2 | Q: | **And did you prepare this table?** |
| 3 | A: | **Yes.** |
| 4 | Q: | **And does this table represent your opinion of the total amount of delays on this project?** |
| 5 | | |
| 6 | A: | **Yes.** |
| 7 | Q: | **And that's 479 days; is that right?** |
| 8 | A: | **That's right.** |
| 9 | Q: | **At the bottom, it says, "Subtotal 425," and those are the days that you believe are attributable to the University?** |
| 10 | A: | **Yes.** |
| 11 | Q: | **That's your opinion today?** |
| 12 | A: | **Yes.** |
| 13 | Q: | **When we talked last time you thought it was a range from 375 to 425. You now have confirmed that it's 425 days?** |
| 14 | | |
| 15 | A: | **I would say that there is still a little bit of a range on there, I would adjust my range. It could come down a little bit or it could go up a little bit, but I believe that this is accurate as I can sit here and talk about today.** |
| 16 | | |
| 17 | Q: | **Okay. And the next column says, "Mixed," and there is six days listed there on the whole project; right?** |
| 18 | | |
| 19 | A: | **Yes.** |
| 20 | Q: | **That means there is six days of concurrent delay that you found on the entire project?** |
| 21 | A: | **On the critical path, yes.** |
| 22 | Q: | **And those are the six days we just talked about for Aman's over excavation?** |
| 23 | | |
| 24 | A: | **That's right.** |
| 25 | Q: | **And then you found an additional 48 days of delay on this project that you attribute to Turner or its subcontractors; is that right?** |
| 26 | A: | **I would like to expand on that. That's not quite what that column means. That column means that I at this state of the game I have not found any change orders or any change events that would justify a time extension for those 48 days.** |
| 27 | | |
| 28 | | |
| | Q: | **So in your opinion there is no justification for a time extension as you** |

|   |   |   |
|---|---|---|
| 1 |   | **sit here today for those 48 days, right?** |
| 2 | A: | **The only thing that I – that may come up is additional information from Overra's consultants with regards to productivity within the beams, but until I – or within the beams, primarily the beam area. And if there was additional information there that was provided to me, I would likely adjust my opinion in there on those areas.** |

(Emphasis added.)[2]

**B.   Murphy's Expert Opinion in the Instant Matter**

In his expert report in this case purportedly analyzing delay in the overall completion of the project based on HPI's work, Murphy sets forth the following opinions:

(1) that there was a 489-day delay in the completion of HPI's work;

(2) that HPI is responsible for 87 calendar days of delay in the overall completion of the Project by virtue of the first phase of HPI's work on the Project (cataloging and removing historical materials).

(3) that there were 259 days of delay in the overall completion of the Project associated with the time period in which HPI was performing the last phase of its work on the Project (first floor finish), and that the 259 days were the "shared responsibility" of HPI and other parties;[3] and

(4) that 28 to 35 of the aforementioned calendar days were the responsibility of parties other than HPI.[4]

In Murphy's deposition in the instant matter, he was questioned and testified regarding his expert opinion and deposition in the Turner-Regents Lawsuit as follows:

Q: But isn't it true that in total there was a 479-day delay in the completion of the project?

A: In the end of the job, yes.

Q: And did you allocate responsibility for that delay between UCB and Turner?

---

[2] A copy of the relevant portions of Murphy's deposition transcript in the Turner-Regents Lawsuit is attached to the Long Dec. as Exhibit B.

[3] It bears noting that the last phase of HPI's scope of work on the Project was actually performed by Turner, not HPI, as HPI had been terminated by Turner in September 2001.

[4] See the Murphy Report at 12. Turner, in turn, has used Murhpy's expert report as the sole and exclusive basis for Turner's claim for liquidated damages against NAICO in this case. See the "Third Supplemental Response to Interrogatory No. 2" set forth in *Turner Construction Company's Verified and Third Supplemental Responses to National American Insurance Company's Interrogatories, Set One* dated July 6, 2004.

| | | |
|---|---|---|
| A: | | Based on change orders that should have allowed for time extensions, based on acceleration that Turner paid for, and based on the mistakes of which Turner didn't accelerate enough to cover up, yes, we assigned either a Turner responsibility or a University responsibility. |
| Q: | | And what were the number of days assigned to UCB? |
| A: | | I don't recall the exact number that we felt that after the acceleration was removed out of the job, that UCB was ultimately responsible for. |
| Q: | | Was it more or less than a hundred days? |
| A: | | I believe that if the – without the acceleration, I believe it would have been around a couple hundred days. |
| Q: | | That's without acceleration, you estimate 200 days? |
| A: | | That we should have got time extension.  When I say time extension, it could be compensable or noncompensable.[5] |

## III. ARGUMENT

### A. Murphy is Properly Excluded Under F.R.E. 702

#### 1. Murphy's Expert Opinion is Inherently Untrustworthy and Unreliable

Rule 702 of the Federal Rules of Evidence requires, among other things, that expert testimony be reliable. Guidroz-Brault v. Missouri Pacific Railroad Co., 254 F.3d 825, 928 (9th Cir. 2001) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993) (holding that the lower court properly excluded plaintiffs' experts whose opinions were unreliable and speculative). District courts must operate as "gatekeepers" for the admission of expert testimony to ensure that such testimony comports with the requirements of Rule 702. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). An expert's opinions should be excluded as unreliable and inherently untrustworthy if they contradict prior expert opinions, reports and testimony arising out of the same operative facts and addressing the same issues. See, e.g., Ed

---

[5] Relevant portions of Murphy's deposition transcript in the instant action are attached to the Long Dec. as Exhibit C.

Peters Jewelry Co., Inc. v. C & J Jewelry Co, Inc., 124 F.3d 252, 260 (1st Cir. 1997) (upholding the exclusion of a portion of the expert's opinion on the grounds of "internally inconsistent" methodology and the "moving target" nature of the opinion); Richmond Medical Center for Women v. Hicks, 301 F. Supp.2d 499, 510-12 (E.D. Va. 2004) (striking expert's testimony as unreliable on the basis that it was inconsistent and incoherent, including conflicting deposition and trial testimony both in the Hicks case and in other cases regarding the same medical issues).

Murphy's expert opinion regarding the **identical facts and issues**—project delay and the causes of the same—has gone from the Regents being responsible for 425 days of project delay in the Turner-Regents Lawsuit, to HPI being responsible for 311-318 days of project delay here. Furthermore, no testimony was found in the Turner-Regents case that qualified, in any form or fashion, his express testimony that the Regents, not Turner or its subcontractors, were responsible for 425 of the 479 days of delay on the Project. In addition, during his deposition the instant matter, Murphy acknowledged that he rendered an expert opinion in the Turner-Regents case attributing significant project delay to the Regents. Murphy's opinion "flip-flop," as described above, renders his opinion in this case unreliable and therefore properly excluded under F.R.E. 702.

### 2. Murphy's Expert Opinion is Based on Erroneous Law

Attempts by Turner to explain away Murphy's prior testimony on the grounds that the Regents did not issue time extensions or compensation for the delays that Murphy (and Turner) claimed to be the responsibility of the Regents in the Turner-Regents lawsuit should be disregarded.[6] An expert's opinions should be excluded as unreliable if they are based on incorrect statements or assumptions of law. Baker v. Urban Outfitters, Inc., 254 F. Supp.2d 346, 353

---

[6] During Turner's 30(b)(6) deposition in this matter, Turner testified that because it did not receive compensation from the Regents for project delays attributed to the Regents, Turner's subcontractors became responsible for said delays.

(S.D.N.Y. 2003); accord U.S. v. City of Miami, 115 F.3d 870 (holding that "[o]pinions derived from erroneous dat a are appropriately excluded"). Here, whether the Regents compensated Turner for delays Turner attributed to the Regents in the Turner-Regents lawsuit is irrelevant as it seeks to enforce an otherwise unenforceable "pay if paid" provision within the subject subcontract in direct contravention of California law.[7] Wm. R. Clarke Corp. v. Safeco Ins. Co. of America, 15 Cal.4th 882, 886 (1997); Capitol Steel Fabricators, Inc. v. Mega Construction Co., 58 Cal.App.4th 1049, 1062 (1997). Thus, Murphy cannot credibly formulate contradictory and inconsistent expert opinions based on the same set of operative facts and legal issue—namely, the facts relating to the delay in the completion of the Project and the party responsible for that delay—with the only variable being the target involved (the Regents in the Turner-Regents Lawsuit, and NAICO here).

## IV.  CONCLUSION

"Expert" Murphy has consistently testified that there was a delay in the completion of the Project of approximately 479-489 days. In the Turner-Regents Lawsuit, Murphy testified under oath and opined, without qualification, that the Regents were responsible for 425 days of that delay (and, furthermore, that six additional days of delay were the responsibility of a subcontractor other than HPI and that 48 additional days of delay may have been the responsibility of Turner and its subcontractors). Now, faced with a different defendant (and the same client), but otherwise analyzing the identical facts, Murphy opines that HPI caused 311-318 days of 489 overall days of Project delay. This is just the sort of "hired gun," inherently untrustworthy expert opinion that F.R.E. 702, and a district court's "gatekeeping" role thereunder, are designed to eliminate before trial. Further and to the extent that Murphy's

---

[7] See NAICO's *Motion in Limine to Exclude Evidence of Non-Payment to Turner Construction Company* filed concurrently herewith.

"expert" opinion is based upon an unenforceable "pay if paid" provision within the subject Subcontract, the testimony is properly excluded in its entirety. Accordingly, NAICO respectfully requests that this Court issue an order precluding Turner's proposed expert, Michael Murphy, from testifying at trial.

DATED: September 7, 2004        SEDGWICK, DETERT, MORAN & ARNOLD LLP


By: s/Joel M. Long
James P. Diwik
Joel M. Long
Attorneys for Defendant
NATIONAL AMERICAN INSURANCE COMPANY